1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

9
# CENTRAL DISTRICT OF CALIFORNIA
10
11

| | |
|---|---|
| JOHN C. HUDDLESTON, | Case No. CV 17-05368-JEM |
| Plaintiff, | |
| v. | MEMORANDUM OPINION AND ORDER AFFIRMING DECISION OF THE COMMISSIONER OF SOCIAL SECURITY |
| NANCY A. BERRYHILL, Acting Commissioner of Social Security, | |
| Defendant. | |

12
13
14
15
16
17

## PROCEEDINGS

18

On July 20, 2017, John C. Huddleston ("Plaintiff" or "Claimant") filed a complaint seeking
19
review of the decision by the Commissioner of Social Security ("Commissioner") denying
20
Plaintiff's application for Social Security Disability Insurance benefits.  The Commissioner filed
21
an Answer on October 30, 2017.  On February 22, 2018, the parties filed a Joint Stipulation
22
("JS").  The matter is now ready for decision.
23

Pursuant to 28 U.S.C. § 636(c), both parties consented to proceed before this
24
Magistrate Judge.  After reviewing the pleadings, transcripts, and administrative record ("AR"),
25
the Court concludes that the Commissioner's decision must be affirmed and this case
26
dismissed with prejudice.
27
28

# BACKGROUND

Plaintiff is a 53 year-old male who applied for Social Security Disability Insurance benefits on July 30, 2014, alleging disability beginning April 15, 2014. (AR 110.) The ALJ determined that Plaintiff had not engaged in substantial gainful activity since April 15, 2014, the alleged onset date. (AR 112.)

Plaintiff's claim was denied initially on September 26, 2014, and on reconsideration on November 26, 2014. (AR 110.) Plaintiff filed a timely request for hearing on December 3, 2014. (AR 110.) Plaintiff appeared and testified at hearings held on January 29, 2016, and October 14, 2016, in Los Angeles, California. (AR 110.) Plaintiff was represented by Mario Davila, a non-attorney representative. (AR 110.) Attorneys/co-representatives Max Ortega and Robina Ali represented Plaintiffs at the hearings. (AR 110.) Vocational experts ("VE") Carmen Roman and Elizabeth Brown-Ramos also appeared and testified at the hearings. (AR 110.)

The ALJ issued an unfavorable decision on January 9, 2017. (AR 110-122.) The Appeals Council denied review on May 19, 2017. (AR 1-4.)

# DISPUTED ISSUES

As reflected in the Joint Stipulation, Plaintiff raises the following disputed issues as grounds for reversal and remand:

1.  Whether the ALJ erred in dismissing the opinions of Plaintiff's treating physicians in favor of the one-time examining physician and the non-examining State agency physicians.

2.  Whether the ALJ properly considered Plaintiff's subjective complaints and credibility according to SSR 96-7p and 20 C.F.R. § 416.929.

3.  Whether the ALJ erred in evaluating the vocational expert's testimony and in formulating an RFC.

4.  Whether the ALJ erred at Step 2 of the sequential evaluation in failing to find that Plaintiff's left ankle and foot impairment, shoulder impairment and obesity were severe impairments.

Under 42 U.S.C. § 405(g), this Court reviews the ALJ's decision to determine whether the ALJ's findings are supported by substantial evidence and free of legal error. Smolen v. Chater, 80 F.3d 1273 , 1279 (9th Cir. 1996); see also DeLorme v. Sullivan, 924 F.2d 841, 846 (9th Cir. 1991) (ALJ's disability determination must be supported by substantial evidence and based on the proper legal standards).

Substantial evidence means "'more than a mere scintilla,' but less than a preponderance." Saelee v. Chater, 94 F.3d 520, 521-22 (9th Cir. 1996) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson, 402 U.S. at 401 (internal quotation marks and citation omitted).

This Court must review the record as a whole and consider adverse as well as supporting evidence. Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006). Where evidence is susceptible to more than one rational interpretation, the ALJ's decision must be upheld. Morgan v. Comm'r of the Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999). "However, a reviewing court must consider the entire record as a whole and may not affirm simply by isolating a 'specific quantum of supporting evidence.'" Robbins, 466 F.3d at 882 (quoting Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989)); see also Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007).

**THE SEQUENTIAL EVALUATION**

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or . . . can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Commissioner has established a five-step sequential process to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920.

The first step is to determine whether the claimant is presently engaging in substantial gainful activity. Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007). If the claimant is engaging

in substantial gainful activity, disability benefits will be denied. <u>Bowen v. Yuckert</u>, 482 U.S. 137, 140 (1987). Second, the ALJ must determine whether the claimant has a severe impairment or combination of impairments. <u>Parra</u>, 481 F.3d at 746. An impairment is not severe if it does not significantly limit the claimant's ability to work. <u>Smolen</u>, 80 F.3d at 1290. Third, the ALJ must determine whether the impairment is listed, or equivalent to an impairment listed, in 20 C.F.R. Pt. 404, Subpt. P, Appendix I of the regulations. <u>Parra</u>, 481 F.3d at 746. If the impairment meets or equals one of the listed impairments, the claimant is presumptively disabled. <u>Bowen</u>, 482 U.S. at 141. Fourth, the ALJ must determine whether the impairment prevents the claimant from doing past relevant work. <u>Pinto v. Massanari</u>, 249 F.3d 840, 844-45 (9th Cir. 2001). Before making the step four determination, the ALJ first must determine the claimant's residual functional capacity ("RFC"). 20 C.F.R. § 416.920(e). The RFC is "the most [one] can still do despite [his or her] limitations" and represents an assessment "based on all the relevant evidence." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). The RFC must consider all of the claimant's impairments, including those that are not severe. 20 C.F.R. §§ 416.920(e), 416.945(a)(2); Social Security Ruling ("SSR") 96-8p.

If the claimant cannot perform his or her past relevant work or has no past relevant work, the ALJ proceeds to the fifth step and must determine whether the impairment prevents the claimant from performing any other substantial gainful activity. <u>Moore v. Apfel</u>, 216 F.3d 864, 869 (9th Cir. 2000). The claimant bears the burden of proving steps one through four, consistent with the general rule that at all times the burden is on the claimant to establish his or her entitlement to benefits. <u>Parra</u>, 481 F.3d at 746. Once this prima facie case is established by the claimant, the burden shifts to the Commissioner to show that the claimant may perform other gainful activity. <u>Lounsburry v. Barnhart</u>, 468 F.3d 1111, 1114 (9th Cir. 2006). To support a finding that a claimant is not disabled at step five, the Commissioner must provide evidence demonstrating that other work exists in significant numbers in the national economy that the claimant can do, given his or her RFC, age, education, and work experience. 20 C.F.R. § 416.912(g). If the Commissioner cannot meet this burden, then the claimant is disabled and entitled to benefits. <u>Id.</u>

**THE ALJ DECISION**

In this case, the ALJ determined at step one of the sequential process that Plaintiff has not engaged in substantial gainful activity since April 15, 2014, the alleged onset date. (AR 112.)

At step two, the ALJ determined that Plaintiff has the following medically determinable severe impairment: right knee pain and weakness post total knee replacement. (AR 112-114.) The ALJ also determined that Plaintiff's left ankle and foot impairment, right shoulder impairment, and obesity were not severe.

At step three, the ALJ determined that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. (AR 114.)

The ALJ then found that Plaintiff had the RFC to perform light work as defined in 20 CFR § 404.1567(b), with the following limitations:

> . . . pushing and pulling with all extremities is limited to frequent, overhead
> reaching with the right upper extremity is limited to occasional, and all other
> reaching on the right side is limited to frequent. Claimant is able to climb ramps
> and stairs no more than frequently and can climb ladders, ropes, and scaffolds no
> more than occasionally. He can no more than occasionally stoop, kneel, crouch,
> and crawl. He should no more than occasionally be exposed to unprotected
> heights and walking on uneven terrain, and he should never be exposed to
> fumes, dust, or other pulmonary irritants. Claimant is able to stand and/or walk
> for no more than four out of eight hours. He needs to have a sit/stand option,
> while remaining on task, that would allow him to shift position to sitting over the
> course of the day for half of the day, meaning he would be on his feet working for
> no more than four out of eight hours.

(AR 114-120.) In determining the above RFC, the ALJ made an adverse credibility determination that Plaintiff's subjective symptom allegations were "not entirely consistent" with the medical and other evidence of record. (AR 115.)

At step four, the ALJ found that Plaintiff is unable to perform his past relevant work as a respiratory therapist and an actor/extra. (AR 120-121.) The ALJ, however, also found that, considering the Claimant's age, education, work experience, and RFC, there are jobs (representative occupations) that exist in significant numbers in the national economy that the Claimant can perform such as parking lot cashier, merchandise marker, and garment sorter. (AR 121-122.)

Consequently, the ALJ found that Claimant is not disabled, within the meaning of the Social Security Act. (AR 122.)

**DISCUSSION**

**I.    THE ALJ'S NONSEVERITY FINDINGS ARE SUPPORTED BY SUBSTANTIAL EVIDENCE**

Plaintiff alleges disability due to a right knee impairment. (AR 115.) Although the ALJ determined that Plaintiff's right knee impairment was a medically determinable severe impairment (AR 112), the ALJ nonetheless found that Plaintiff could perform a reduced range of light work. (AR 114.) Plaintiff also alleged disability due to a number of other impairments that the ALJ found to be nonsevere. (AR 113-114.) Plaintiff contends that the ALJ's step two findings that Plaintiff's left ankle and foot impairment, shoulder impairment, and obesity are not severe (AR 113-114) are unsupported by substantial evidence. The Court disagrees.

At step two of the sequential inquiry, the ALJ determines whether the claimant has a medically severe impairment or combination of impairments. Bowen, 482 U.S. at 140-41. An impairment is not severe if it does not significantly limit the claimant's ability to work. Smolen, 80 F.3d at 1290. The ALJ, however, must consider the combined effect of all the claimant's impairments on his ability to function, regardless of whether each alone was sufficiently severe. Id. Also, the ALJ must consider the claimant's subjective symptoms in determining severity. Id. The step two determination is a de minimis screening device to dispose of groundless claims. Bowen, 482 U.S. at 153-54. An impairment or combination of impairments can be found nonsevere only if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work. See SSR 85-28; Webb v. Barnhart, 433 F.3d

683, 686-87 (9th Cir. 2006); Smolen, 80 F.3d at 1290; Yuckert v. Bowen, 841 F.2d 303, 306 (9th Cir. 1988) (adopting SSR 85-28).

Preliminarily, the Court observes that, because the ALJ found Plaintiff's right knee impairment was severe and therefore proceeded beyond step two in the sequential evaluation, there can be no harmful error from the ALJ's nonseverity determinations. Lewis v. Astrue, 498 F.3d 909, 911 (9th Cir. 2007) (any error in finding an impairment at step two is harmless if it is considered and accommodated at later steps in the sequential evaluation). In assessing a claimant's RFC, the ALJ must consider all impairments, severe or not severe. 20 C.F.R. § 404.1520(e). Here, the ALJ specifically noted that he considered all of Claimant's impairments, not just his severe knee impairment, in assessing his RFC. (AR 114.) Thus, any error in the ALJ's nonseverity findings would be harmless. See Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008) (finding that an error is harmless when it is "inconsequential to the ultimate nondisability determination" (citations omitted)); Carmichael v. Comm'r Soc. Sec. Adm., 533 F.3d 1155, 1162 (9th Cir. 2008) (error is harmless where it would not change the outcome of the disability determination).

A.      Left Knee and Ankle

An MRI of Plaintiff's left ankle on November 2, 2015, showed mild to moderate osteoarthritic changes, moderate calcaneocuboid joint effusion, thickening of ligaments with a chronic partial tear, and mild to moderate fluid in the tendons. (AR 113, 557.) In April 2016, however, examination of Plaintiff's ankles and feet revealed normal contour and alignment of the ankles. (AR 113, 715.) There was no tenderness. (AR 113, 715.) Range of motion was full and painless and he had five out of five motor strength. (AR 113, 715.) Based on these objective medical findings, the ALJ found Plaintiff's left foot and ankle impairment to be nonsevere but included protective limitations on walking, standing, pushing and pulling in the RFC. (AR 113.)

Plaintiff notes that in January 2016 he required a left ankle fiberglass cast and was told to elevate his leg as much as possible. (AR 690, 58.) Plaintiff, however, admitted at the hearing the cast was only temporary. (AR. 61.) By April 2016, he had no cast and no ankle

issues.  (AR 715.)  Plaintiff also contends that in September 2016 he was planning to undergo ankle fusion surgery (AR 1129), but Plaintiff points to no medical opinion recommending it, and the treatment note Plaintiff cites indicates only mild ankle osteoarthritis with intact joint space and painless range of motion.  (AR 1129.)  Even if Plaintiff had a severe left ankle impairment at this time, it would not satisfy the 12 month durational requirement.  See 20 C.F.R. § 404.1509 (impairment must last 12 months to be disabling).  The ALJ specifically observed that he analyzed the longitudinal record and found no continuous period of twelve months or more during which Plaintiff had greater restrictions in his RFC.  (AR 120.)

### B.  Right Shoulder

In December 2015, Plaintiff complained of pain in the right shoulder.  (AR 113, 573.)  He was found to have adhesive capsulitis and mild degenerative changes.  (AR 113, 559.)  As of April 2016, however, Claimant's right shoulder had full and painless range of motion.  (AR 113, 714.)  There was negative impingement sign and negative cross arm abduction sign.  (AR 113, 714.)  There was no instability of the right shoulder.  (AR 113, 714.)  The ALJ found the impairment nonsevere but included protective restrictions in the RFC.  (AR 113.)

Plaintiff stresses the December 2015 finding of shoulder pain, but he was only referred for physical therapy.  (AR 579.)  This was successful because by April 2016 he had full and painless range of motion in the shoulder.  (AR 113, 714.)  Plaintiff also points to a treatment note dated September 19, 2016, that Plaintiff presented with frozen right shoulder since 2015 (AR 1115), but this note does not acknowledge the April 2016 finding that Plaintiff had full and painless range of motion.  Any deterioration after the April 2016 finding would not meet the 12 month durational requirement as considered by the ALJ.  (AR 120.)

### C.  Obesity

The ALJ found that Plaintiff was extremely obese but found that Level III obesity in itself does not cause significant limitations in his ability to perform basic work activities and therefore was nonsevere.  (AR 113-114.)  Plaintiff contends that the ALJ failed to perform an individualized assessment and failed to consider whether Plaintiff's obesity in combination with his other orthopedic impairments would equal a listed impairment.  Plaintiff, however, failed to

8

present any evidence supporting additional functional limitations beyond those included in the ALJ's RFC.  Burch v. Barnhart, 400 F.3d 676, 684 (9th Cir. 2005) ("Burch has not set forth, and there is no evidence in the record, of any functional limitations as a result of her obesity that the ALJ failed to consider.").

Obesity, moreover, is not itself disabling and is no longer a listed impairment.  See Revised Medical Criteria For Determination Of A Disability, Endocrine System And Related Criteria, 64 Fed. Reg. 46122 (effective October 25, 1999) (de-listing 9.09 "Obesity" from Appendix 1, Subpart P of Part 404).  Plaintiff cites Celaya v. Halter, 332 F.3d 1177 (9th Cir. 2003), which held that the ALJ in that case should have considered obesity as a disabling factor in the sequential analysis, even though not explicitly raised by the claimant, because (1) obesity was raised implicitly in the claimant's report of symptoms, (2) the claimant's obesity was at least close to the listing criterion and was a condition that could exacerbate other reported impairments, and (3) the claimant's lack of representation should have alerted the ALJ to the need to develop the record further.  Id. at 1182.

Celaya's reach, however, was limited by the Ninth Circuit in Burch, which held that the failure to consider obesity at step two was no error where there was no evidence that claimant's obesity exacerbated other impairments and claimant was represented by counsel.  Id. at 682. Burch also held that the ALJ did not err in failing to consider a claimant's obesity at step three because "[a]n ALJ is not required to discuss the combined effects of a claimant's impairments or compare them to any listing in an equivalency determination unless the claimant presents evidence in an effort to establish equivalence."  Id. at 683.  The Ninth Circuit found no reversible error in the ALJ's failure to discuss how Claimant's impairments equaled a listing because there was no evidence that Claimant's obesity limits her functioning.  Id.  Burch also found no error in the ALJ's RFC because there was no evidence of any functional limitations due to obesity that the ALJ failed to consider.  Id. at 684.  Following Burch, several Central District decisions upheld ALJ failures to discuss obesity as more closely resembling Burch than Celaya, where there was no evidence that a claimant's obesity caused any functional limitations or exacerbated other impairments.  Hogle v. Astrue, 2010 WL 3894621, at *3 (C.D.

Cal. Sept. 30, 2010); Ashby v. Astrue, 2009 WL 2524582, at *3 (C.D. Cal. Aug. 17, 2009); Mason v. Astrue, 2009 WL 1309524, at *8 (C.D. Cal. May 11, 2009).

This case, too, is more like Burch than Celaya because Plaintiff has not identified any additional limitations beyond those in the ALJ's RFC. There is no medical evidence establishing that Plaintiff's obesity resulted in any functional limitations that the ALJ did not consider. Plaintiff notes that a physician told Plaintiff weight loss would help decrease his pain (AR 1115), but this advice does not establish additional functional limitations based on obesity. Plaintiff also fails to support his assertion the obesity equaled a Listing; indeed, Plaintiff does not even identify the Listing he claims he would meet or equal. Burch, 400 F.3d at 682-83 (although claimant contends that the ALJ erred in not considering obesity when assessing the Listings, "she does not specify which listing she believes she meets or equals," nor "set forth any evidence which would support the diagnosis and findings of a listed impairment").

* * *

Plaintiff disagrees with the ALJ's assessment of the record evidence in determining whether Plaintiff's left foot and ankle impairment, right shoulder impairment, and obesity are severe, but it is the ALJ's responsibility to resolve conflicts in the medical evidence and ambiguities in the record. Andrews, 53 F.3d at 1039. Where the ALJ's interpretation of the record is reasonable, as it is here, it should not be second-guessed. Rollins v. Massanari, 261 F.3d at 853, 857 (9th Cir. 2001); Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002) ("Where the evidence is susceptible to more than rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld.").

The ALJ's conclusion that Plaintiff's left foot and ankle impairment, right shoulder impairment, and obesity are not severe is supported by substantial evidence. Any error in the ALJ's determination of severity, moreover, would be harmless because the ALJ did not stop at step two of the sequential evaluation, but proceeded to consider those impairments, severe or not, in subsequent steps and to accommodate those impairments in Plaintiff's RFC.

## II. THE ALJ PROPERLY CONSIDERED THE MEDICAL EVIDENCE

Plaintiff contends that the ALJ's RFC for a reduced range of light work is not supported by substantial evidence. More specifically, Plaintiff asserts that the ALJ did not give specific, legitimate reasons for rejecting the opinions of Plaintiff's treating physicians, Dr. Myles Spar and Dr. Abid Chaudry. Plaintiff also argues that the opinion of Dr. Warren Yu and other physicians relied on by the ALJ are not supported by substantial evidence. The Court disagrees.

### A. Relevant Federal Law

The ALJ's RFC is not a medical determination but an administrative finding or legal decision reserved to the Commissioner based on consideration of all the relevant evidence, including medical evidence, lay witnesses, and subjective symptoms. See SSR 96-5p; 20 C.F.R. § 1527(e). In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record, including medical records, lay evidence, and the effects of symptoms, including pain reasonably attributable to the medical condition. Robbins, 446 F.3d at 883.

In evaluating medical opinions, the case law and regulations distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (non-examining, or consulting, physicians). See 20 C.F.R. §§ 404.1527, 416.927; see also Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995). In general, an ALJ must accord special weight to a treating physician's opinion because a treating physician "is employed to cure and has a greater opportunity to know and observe the patient as an individual." Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989) (citation omitted). If a treating source's opinion on the issues of the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with other substantial evidence in the case record, the ALJ must give it "controlling weight." 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).

Where a treating doctor's opinion is not contradicted by another doctor, it may be rejected only for "clear and convincing" reasons. Lester, 81 F.3d at 830. However, if the

treating physician's opinion is contradicted by another doctor, such as an examining physician, the ALJ may reject the treating physician's opinion by providing specific, legitimate reasons, supported by substantial evidence in the record.  Lester, 81 F.3d at 830-31; see also Orn, 495 F.3d at 632; Thomas, 278 F.3d at 957.  Where a treating physician's opinion is contradicted by an examining professional's opinion, the Commissioner may resolve the conflict by relying on the examining physician's opinion if the examining physician's opinion is supported by different, independent clinical findings.  See Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995); Orn, 495 F.3d at 632.  Similarly, to reject an uncontradicted opinion of an examining physician, an ALJ must provide clear and convincing reasons.  Bayliss v. Barnhart, 427 F.3d 1211, 1216 (9th Cir. 2005).  If an examining physician's opinion is contradicted by another physician's opinion, an ALJ must provide specific and legitimate reasons to reject it.  Id.  However, "[t]he opinion of a non-examining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician"; such an opinion may serve as substantial evidence only when it is consistent with and supported by other independent evidence in the record.  Lester, 81 F.3d at 830-31; Morgan, 169 F.3d at 600.

**B.    Analysis**

1.    Background

Claimant alleges disability due to a right knee impairment (AR 112, 115.)  On December 27, 2013, Plaintiff underwent a right knee menisectomy to repair a medial meniscus tear.  (AR 115, 367.)  At a February 10, 2014 follow-up, he had returned to his former level of activity prior to the surgery.  (AR 115-116, 367.)  His right lower extremity had full range of motion with minimal tenderness to palpation along the joint line.  (AR 115-116, 367.)  Beginning June 2014, however, Plaintiff complained of increasing right knee pain.  (AR 116, 362.)  In November 2014, he was approved for total knee replacement surgery which occurred in March 2015.  (AR 116.)

Starting April 2015, Plaintiff underwent extensive physical therapy.  (AR 116-117.)  In May 2015, he was "doing great," and his pain was well controlled.  (AR 116, 483, 1176.)  In June 2015, he was doing better three months out from surgery.  (AR 116, 487.)  On September

1, 2015, he reported that his right knee was much better but still not great. (AR 116, 602.) In November 2015, Plaintiff reported that his right knee was better post total knee replacement but still numb. (AR 117, 594.) In December 2015, Plaintiff's pain was 3 on a scale of 10 and he reported great improvement since beginning physical therapy, but did report pain and limited range of motion. (AR 117, 655.)

On April 3, 2016, Claimant underwent a consulting orthopedic examination with Dr. Warren Yu. (AR 117, 712-722.) Dr. Wu observed that Plaintiff has dramatically improved his knee pain since the March 10, 2015 total knee pain replacement surgery but continues to have quad weakness and thigh numbness. (AR 117, 712.) Dr. Yu found normal alignment and contour in the knees, mild tenderness, no effusion or instability, and full extension with 115 degrees of flexion. (AR 117, 714.) Range of motion in the ankes and feet was full and painless, and motor strength in the upper and lower extremities was preserved. (AR 117, 715.) Dr. Yu noted Claimant could walk with a limp on the right side about a block without a cane (AR 117, 713), but may require the use of a cane for long distance ambulation. (AR 118, 716, 718.) Dr. Wu assessed Plaintiff with a reduced range of light work RFC and indicated that Plaintiff could stand or walk four hours in an eight hour day and bend, crouch, stoop, and crawl occasionally. (AR 118, 715-716.)

The ALJ adopted most of Dr. Yu's restrictions and added a sit/stand option. (AR 118.) The ALJ also found no substantial need for a cane for work. (AR 118.) The ALJ's RFC, then, was based on Dr. Yu's opinion and the documented record of Plaintiff's improvement with physical therapy. (AR 118.)

2.    Plaintiff's Contentions Regarding Dr. Yu

Plaintiff contends that Dr. Yu's opinion lacks substantial evidence because it is inconsistent with his clinical examination findings. A physician's opinion may be rejected if it is inconsistent with his or her treatment notes. Batson v. Comm'r, 359 F.3d 1190, 1195 & n.3 (9th Cir. 2004). Specifically, Plaintiff challenges Dr. Yu's finding that Plaintiff could walk a block without a cane, based on the fact that he could move around the examining room without a cane. (AR 117.) Plaintiff, however, mischaracterizes the evidence. Plaintiff in fact was using a

cane to get around the exam room, but Dr. Yu determined that he could walk with a limp on the right side and a cane was not necessary other than for longer distances. (AR 117, 713, 716.) Dr. Yu, moreover, based his RFC on his entire examination, not simply Plaintiff's movements in the exam room. Dr. Yu's opinion that Plaintiff could walk a block without a cane was consistent with other findings of full motor strength and no instability in the knee or ankle. (AR 714-15.) Indeed, Plaintiff's own treating physician, Dr. Myles Spar, reported in December 2014 Plaintiff could walk a block. (AR 418.) He also reported in November 2014 that Plaintiff could travel to and from the house for appointments. (AR 394.) Dr. Yu's opinion was based on his own observations and examination and was not unreasonable. Plaintiff simply disagrees with Dr. Yu's assessment of the evidence. As already noted, however, it is the ALJ who has the responsibility to resolve conflicts in the evidence and ambiguities in the record. Andrews, 53 F.3d at 1039. Where the ALJ's interpretation is reasonable, as it is here, it should not be second-guesses. Rollins, 261 F.3d at 857. The same analysis applies to Plaintiff's argument that Dr. Yu's findings of atrophy of the right quad and thigh tenderness (AR 712) is inconsistent with his RFC for four hours of walking. The ALJ, moreover, added the protective restriction of a sit/stand option that resolves any issue with Dr. Yu's RFC restrictions for the right knee.

Plaintiff's next contention is that Dr. Yu failed to adequately consider Plaintiff's pain and medication side effects. Plaintiff, however, cites no evidence to support his assertion. Dr. Yu reported Plaintiff's medications of Ibuprofen, Tramadol, and Vicodin for breakthrough pain. (AR 712, 713.) Dr. Yu's opinion is replete with consideration of Plaintiff's pain. Plaintiff's disagreement with Dr. Yu's conclusions does not mean they are unsupported by substantial evidence.

Dr. Yu's RFC as modified by the ALJ is based on substantial evidence. Plaintiff failed to provide specific, legitimate reasons for rejecting it. The ALJ did not err in relying on Dr. Yu's opinion.

3.      Plaintiff's Contentions Regarding Dr. Spar And Dr. Chaudry

Plaintiff contends that the ALJ erred in discounting the RFC assessments of Plaintiff's treating physicians, Dr. Myles Spar and Dr. Abid Chaudry. The Court disagrees.

In November 2014, Dr. Spar indicated Plaintiff was cleared to undergo a total knee replacement.  (AR 116, 398-400.)  Dr. Spar filled out a lower extremities impairment questionnaire (AR 390-397) indicating Plaintiff did not need a hand held device to walk and could regularly carry out activities of daily living.  (AR 118, 392-393.)  He opined Plaintiff could lift 20 pounds occasionally and could sit, stand or walk only one hour in an eight hour day.  (AR 118, 393.)  He also opined that Plaintiff could not kneel, bend, or stoop.  (AR 118, 396.)  Dr. Spar wrote a letter on December 16, 2014, stating that Plaintiff's suspected disability would end up lasting more than 12 months since it started in June 2014 and he was not anticipated to have surgery until March 2015.  (AR 119, 418.)  He completed a form in January 2015 indicating Claimant was disabled and unable to work.  (AR 119, 432.)

The ALJ credited Dr. Spar's light work lift and carry restrictions and agreed with his opinion that Plaintiff did not need a cane, but rejected Dr. Spar's postural limitations as "more extreme than justified by the Claimant's documented activity level" (AR 118, 119), which is a reference to the extensive physical therapy records showing improvement.  An ALJ may reject a physician's opinion that is unsupported by the record as a whole.  Batson, 359 F.3d at 1195 & n.3.  Dr. Spar's less than sedentary RFC also was inconsistent with his own questionnaire assessment, which indicated Plaintiff did not need a cane, could regularly carry out activities of daily living, and could travel to and from the house and attend appointments.  An ALJ may reject a physician's opinion that is contradicted by his own treatment notes (id.) and by  a claimant's own admitted or observed abilities.  Bayliss, 427 F.3d at 1216.  Additionally, two State agency reviewing physicians, based on the entire record through September and November 2014, opined Plaintiff could perform light work and occasionally climb, balance, stoop, kneel, crouch, and crawl.  (AR 118, 91-93, 101-103.)  The ALJ gave these opinions substantial weight with respect to the period before the March 2015 right knee replacement surgery.  (AR 118, 119.)  The contradictory opinions of other physicians provide specific, legitimate reasons for rejecting a physician's opinion.  Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001); see also Thomas, 278 F.3d at 957 (opinions of non-treating or non-

examining physicians may also serve as substantial evidence when the opinions are consistent with independent clinical findings or other evidence in the record).

Dr. Spar completed another lower extremities questionnaire dated November 19, 2015, after Plaintiff's March 2015 right knee replacement surgery.  (AR 119, 524, 531.)  Dr. Spar found that Claimant needed a cane to ambulate, could stand only one hour a day, and could never kneel, bend, or stoop.  (AR 119.)  He opined Plaintiff would miss work more than three times per month.  (AR 119.)  The ALJ gave this opinion little weight because it was inconsistent with Dr. Spar's earlier opinion and with Dr. Yu's subsequent opinion in April 2016, and because it does not adequately take into account the continuing rehabilitation of his right knee through physical therapy.  (AR 119.)  Plaintiff challenges the ALJ's finding of inconsistency with Dr. Spar's earlier opinion, but Dr. Spar in November 2014 found Plaintiff did not need a cane but in November 2015 found he did because of his left ankle.  (AR 526.)  In April 2016, Dr. Yu found Plaintiff was able to walk despite a limp on the right side.  (AR 117.)  Plaintiff's ankles and feet were entirely normal with full and painless range of motion and no edema.  (AR 715.)  As for Plaintiff's right knee, Dr. Yu found normal alignment and contour, intact motor strength, and preserved sensation and some numbness over the thigh area.  (AR 714-715.)  Dr. Yu opined that Plaintiff may require use of a cane for long distance ambulation but not for shorter walks.  (AR 716, 718.)  Dr. Spar found in November 2015 that Plaintiff could not kneel, bend, or stoop, but by April 2016 Dr. Yu found Plaintiff could do so.  (AR 530, 713-714, 716.)  Dr. Yu's independent clinical findings five months later are substantial evidence.  Orn, 495 F.3d at 632-33.  Despite Plaintiff's attempt to suggest that his knee worsened after the March 2015 surgery, he told Dr. Spar in his November 19, 2015 office visit that his right knee[1] was better post total knee replacement.  (AR 119, 594.)  He also testified at the hearing that his knee had improved following surgery and physical therapy rehabilitation.  (AR 59.)  Physical therapy records document rehabilitative progress.  (AR 120.)

---

[1]  The ALJ mistakenly referred to Plaintiff's left knee in his opinion.  (AR 119.)  Both parties agree that the ALJ was referring to the right knee.  Dr. Spar's treatment note also incorrectly referenced a "left" knee replacement that was "better" post total knee replacement.  (AR 594.)

On December 22, 2015, Dr. Spar opined Plaintiff would miss more than three days a week because of a right shoulder impairment. (AR 120, 563-67.) Dr. Spar found Plaintiff could not lift more than five pounds and rarely use his right arm to handle objects. (AR 565.) Dr. Spar did not indicate that Plaintiff's shoulder impairment was expected to last at least 12 months. (AR 564.) The ALJ afforded little weight to this opinion. (AR 120.) Plaintiff did not have an initial physical therapy evaluation for his shoulder until January 21, 2016. (AR 120, 642.) The ALJ found that Plaintiff's right shoulder substantially improved within months, as Plaintiff had full and painless range of motion at Dr. Yu's examination in April 2016. (AR 120, 714.) There was no instability of the right shoulder. (AR 120, 714.) Indeed, the ALJ found Plaintiff's right shoulder impairment nonsevere and added restrictions to the RFC. (AR 120, 113.) Plaintiff does not contend that the ALJ erred in affording Dr. Spar's third opinion little weight.

Dr. Abid Chaudry, a podiatrist, completed a lower extremities impairment questionnaire on January 21, 2016. (AR 119, 692-700.) Dr. Chaudry opined Plaintiff required use of a cane, could stand or walk for zero to one hour, was unable to carry out activities of daily living, could not lift more than 10 pounds, and needed to elevate his legs. (AR 695-697.) He assessed no limitations in kneeling, bending, or stooping. (AR 699.) The ALJ gave Dr. Chaudry's opinion little weight because it inaccurately implies that Claimant was worse after the right knee replacement surgery instead of better, it is materially more restrictive than the other medical opinions already discussed, and it is not consistent with the physical therapy records and Dr. Yu's April 2016 opinion. (AR 119.) Dr. Chaudry's January 2016 RFC limitations are more severe than those of Dr. Spar's November 2015 RFC, even though the opinions are but two months apart. Dr. Spar indicated Plaintiff could carry out activities of daily living independently and without assistance (AR 527) whereas Dr. Chaudry opined Plaintiff could not carry out activities of daily living. (AR 696.) Dr. Spar indicated Plaintiff did not need to elevate his legs (AR 528) but Dr. Chaudry said he did. (AR 697.) As for Plaintiff's ankle impairment, the ALJ found that the evidence did not support even a severe impairment as discussed above. (AR

113.)  Imaging of the ankle showed only mild to moderate osteoarthritic changes and a partial ligament tear.  (AR 113, 557.)  Dr. Yu in April 2016 found normal contour and alignment of the ankles, no tenderness, full and painless range of motion, and five out of five motor strength. (AR 113, 714-15.)

Plaintiff contends that the ALJ overlooked the length of Plaintiff's treating relationship with Dr. Spar, which is one of the factors in 20 C.F.R. § 404.1527(c) that the Ninth Circuit in Trevizo v. Berryhill, 871 F.3d 664, 676 (9th Cir. 2017), held the ALJ must "consider" when evaluating a treating physician's opinion.  Courts, however, have declined to read Trevizo as requiring that each factor be explicitly enumerated in the ALJ decision.  An ALJ satisfies Section 1527(c)(2) if "the record sufficiently shows he considered the necessary elements." Hoffman v. Berryhill, 2017 WL 3641881, at *2-4 (S.D. Cal. Aug. 24, 2017).  As Hoffman sets forth, the Ninth Circuit prior to Trevizo upheld numerous ALJ decisions that did not discuss explicitly each of the factors in Section 1527(c).  Hoffman, 2017 WL 3641881, at *2-4; see also Bray v. Comm'r, 554 F.3d 1219, 1221, 1227-28 (9th Cir. 2009); Tommasetti, 533 F.3d at 1041; Magallanes, 881 F.2d at 751-54.  Trevizo did not indicate it was reversing these prior precedents.  Hoffman, 2017 WL 3641881, at *4.  Here, the ALJ recognized that Dr. Spar was Plaintiff's treating physician and reviewed his treating history and summarized his treating notes and RFC assessments.  (AR 115-120.)  Unlike in Trevizo, the ALJ here did not make a "conclusory" determination that Dr. Spar's RFC assessment was inconsistent with the record but gave multiple, specific, legitimate reasons for discounting some of the restrictions he assessed.  The ALJ properly relied on Dr. Yu's April 2016 findings five months after Dr. Spar's November 2015 RFC assessment and the extensive physical therapy records demonstrating improvement not deterioration of Plaintiff's right knee.  The same analysis applies to Dr. Chaudry.

* * *

Plaintiff disputes the ALJ's assessment of the medical evidence, but again it is the ALJ's responsibility to resolve conflicts in the medical evidence and ambiguities in the record.

Andrews, 53 F.3d at 1039. Where the ALJ's interpretation of the record is reasonable, as it is here, it should not be second-guessed. Rollins, 261 F.3d at 857.

The ALJ properly considered the medical evidence. The ALJ provided specific, legitimate reasons supported by substantial evidence for rejecting the opinions of Dr. Spar and Dr. Chaudry.

## II. THE ALJ PROPERLY DISCOUNTED PLAINTIFF'S SUBJECTIVE SYMPTOM ALLEGATIONS

Plaintiff contends that the ALJ improperly discounted Plaintiff's subjective symptoms allegations. The Court disagrees.

### A. Relevant Federal Law

The test for deciding whether to accept a claimant's subjective symptom testimony turns on whether the claimant produces medical evidence of an impairment that reasonably could be expected to produce the pain or other symptoms alleged. Bunnell v. Sullivan, 947 F.2d 341, 346 (9th Cir. 1991); see also Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998); Smolen, 80 F.3d at 1281-82 esp. n.2. The Commissioner may not discredit a claimant's testimony on the severity of symptoms merely because they are unsupported by objective medical evidence. Reddick, 157 F.3d at 722; Bunnell, 947 F.2d at 343, 345. If the ALJ finds the claimant's pain testimony not credible, the ALJ "must specifically make findings which support this conclusion." Bunnell, 947 F.2d at 345. The ALJ must set forth "findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony." Thomas, 278 F.3d at 958; see also Rollins, 261 F.3d at 857; Bunnell, 947 F.2d at 345-46. Unless there is evidence of malingering, the ALJ can reject the claimant's testimony about the severity of a claimant's symptoms only by offering "specific, clear and convincing reasons for doing so." Smolen, 80 F.3d at 1283-84; see also Reddick, 157 F.3d at 722. The ALJ must identify what testimony is not credible and what evidence discredits the testimony. Reddick, 157 F.3d at 722; Smolen, 80 F.3d at 1284.

## B.  Analysis

In determining Plaintiff's RFC, the ALJ concluded that Plaintiff's medically determinable impairments reasonably could be expected to cause his alleged symptoms.  (AR 115.)  The ALJ, however, also found that Plaintiff's statements regarding the intensity, persistence, and limiting effects of these symptoms are "not entirely consistent" with the medical evidence and other evidence in the record.  (AR 115.)  Because the ALJ did not make any finding of malingering, he was required to provide clear and convincing reasons supported by substantial evidence for discounting Plaintiff's credibility.  Smolen, 80 F.3d at 1283-84; Tommasetti, 533 F.3d at 1039-40.  The ALJ did so.

Preliminarily, Plaintiff cites SSR 96-7p as the governing SSA advice on the credibility of subjective complaints.  That advice, however, has been superseded by SSR 16-3p, which provides that credibility findings "must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms."

The ALJ discounted Plaintiff's subjective symptom allegations for a number of reasons. First, the ALJ found that the RFC assessment is "supported by the clear weight of the evidence over the entire period pertinent to this claim, including the medical opinions."  (AR 120.)  An ALJ is permitted to consider whether there is a lack of medical evidence to corroborate a claimant's alleged symptoms so long as it is not the only reason for discounting a claimant's credibility.  Burch, 400 F.3d at 680-81.  As already noted, the ALJ found Plaintiff's left foot and ankle impairment, right shoulder impairment, and obesity were not severe.  The ALJ also found that following a total knee replacement in March 2015 Plaintiff's severe right knee impairment improved with documented rehabilitative progress through physical therapy.  (AR 120.)  The ALJ rejected more restrictive RFC assessments by Dr. Spar and Dr. Chaudry for specific, legitimate reasons supported by substantial evidence.  The ALJ's RFC is supported by

substantial evidence based on physical therapy records and the opinions of Dr. Yu and two State reviewing physicians.

Second, the ALJ noted daily activities inconsistent with disabling limitations, which is a legitimate consideration in evaluating credibility. Bunnell, 947 F.2d at 345-46. Here, the ALJ noted that Plaintiff was able to do dishes, prepare meals, and help his kids in the morning. (AR 115.) The ALJ determined that the daily activities are not limited to the extent one would expect, given the complaints of disabling symptoms and limitations. (AR 115.) Plaintiff argues that household chores are not considered substantial gainful activity under the Regulations, C.F.R. § 404.1572(c), but these activities are nonetheless relevant in evaluating subjective symptoms. See 20 C.F.R. § 404.1529(c)(3); Molina v. Astrue, 674 F.3d 1104, 1113 (9th Cir. 2012). Even if these activities do not amount to work, they may be considered in evaluating credibility because they suggest Claimant has greater functional abilities than alleged. Valentine v. Astrue, 574 F.3d 685, 694 (9th Cir. 2009). In any event, there is evidence other than household chores to support the ALJ's finding that Plaintiff's daily activities are inconsistent with disabling impairments. Dr. Spar on November 10, 2015, and again on November 19, 2015, found that Plaintiff can "regularly carry out activities of daily living independently without assistance," including travel to and from the house and attend appointments. (AR 393, 527.) The physical therapy records also document substantial improvement in his right knee pain following his March 2015 surgery.

The ALJ discounted Plaintiff's subjective symptoms for clear and convincing reasons supported by substantial evidence.

## IV.     THE ALJ DID NOT ERR IN EVALUATING THE VE TESTIMONY

At step five of the sequential process, the ALJ determined that Plaintiff, based on the assessed RFC, was capable of performing the light work unskilled occupations of merchandise marker, garment sorter, and parking lot cashier. (AR 121-122.) Plaintiff argues that the ALJ's RFC limitations preclude these occupations and that the RFC was wrongly assessed because it should have included the need for a cane. These arguments lack merit.

The ALJ's RFC includes no more than occasional overhead reaching with the right upper extremity and a sit/stand option. (AR 114.) Plaintiff claims that these limitations would preclude the three occupations and that the ALJ failed to obtain an explanation from the VE for the apparent conflict as required. See SSR 00-4p; Massachi v. Astrue, 486 F.3d 1149, 1152-53 (9th Cir. 2007) (adjudicator must inquire about any possible conflict between VE testimony and the Dictionary of Occupational Titles ("DOT")). Plaintiff, however, does not describe any conflict with the DOT because the DOT does not address either overhead reaching or a sit/stand option. Thus, there is no conflict with the DOT. See Dewey v. Colvin, 650 F. App'x 512, 514 (9th Cir. 2016) (finding that, because the DOT is silent on whether jobs in question require a sit/stand option, there is no conflict). The ALJ, moreover, did inquire of the VE whether her testimony was consistent with the DOT and she confirmed that it was. (AR 45.) Plaintiff also suggests that, because the jobs are unskilled, they were unlikely to accommodate a sit/stand option. The VE, however, specifically testified that the unskilled occupations she identified would permit a sit/stand option. (AR 41-42.) Plaintiff also notes that the VE did not provide statistics to support her testimony, but there is no requirement that she do so. See Bayliss, 427 F.3d at 1218 ("A VE's recognized expertise provides the necessary foundation for his or her testimony. Thus, no additional foundation is required.").

Plaintiff also challenges the ALJ's RFC because it does not include the requirement of a cane. See Embrey v. Bowen, 849 F.2d 418, 423 (9th Cir. 1988) (ALJ's hypothetical question to a VE must include all of a claimant's limitations). The ALJ, however, specifically found that Plaintiff did not need a cane. (AR 117, 118.) An ALJ is not required to include limitations he or she rejected as not supported by substantial evidence or based on subjective complaints properly discounted. Magallanes, 881 F.2d at 756-67; Thomas, 278 F.3d at 959-60; Copeland v. Bowen, 861 F.2d 536, 640-41 (9th Cir. 1988) (hypothetical question need not include claimant's subjective symptoms if the ALJ makes adverse credibility finding); Osenbrock v. Apfel, 240 F.3d 1157, 1164-65 (9th Cir. 2001). Additionally, the VE testified that the need for a cane, if that were required, would not preclude any of the occupations identified. (AR 46-47.)

1    The ALJ's step five determination that Plaintiff could perform the occupations of

2    merchandise marker, garment sorter, and parking lot cashier is supported by substantial

3    evidence.

4                                        * * *

5    The ALJ's nondisability determination is supported by substantial evidence and free of

6    legal error.

7                                      **ORDER**

8    IT IS HEREBY ORDERED that Judgment be entered affirming the decision of the

9    Commissioner of Social Security and dismissing this action with prejudice.

10

11   DATED: May 31, 2018                    _____/s/ John E. McDermott_____

12                                          JOHN E. MCDERMOTT
                                            UNITED STATES MAGISTRATE JUDGE

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28